## ED ROCH v. THE STATE.

No. 3810.  Decided November 6, 1907.

**1.—Assault With Intent to Murder—Evidence—Adequate Cause—Removing Fence.**

Where upon trial for assault with intent to murder, the defendant attempted to prove an agreed boundary between his land and prosecutor's land, and all the antecedent bickerings between the parties and their previous agreements about the boundary fence, and the character of circumstances under which they were then resting, to show that defendant's mind at the time of the alleged assault was incapable of cool reflection, all of which testimony the court rejected over defendant's exception. Held, reversible error, although the evidence did not show that the prosecutor at the time of the assault made an effort to assault the defendant.

**2.—Same—Reputation of Prosecutor—Evidence.**

Upon trial for assault with intent to murder, where there is no evidence tending to show any demonstration on the part of prosecutor to inflict any violence on the defendant, at the time of the alleged assault by defendant, there was no error in excluding testimony as to the general reputation of prosecutor as a violent and dangerous man.

**3.—Same—Charge of Court—Intent to Kill—Aggravated Assault—Self-Defense.**

Where upon trial for assault with intent to murder, the charge of the court correctly presented the reasonable doubts as to the two issues of assault with intent to murder and aggravated assault, and the evidence showed that the prosecutor was making no demonstration against defendant at the time of the assault, there was no error, and a charge on self-defense was not warranted.

**4.—Same—Defense of Property—Fence—Agreement of Boundaries.**

Where upon trial for assault with intent to murder, the evidence should show that the defendant had a right under an agreement with prosecutor to the land attempted to be taken in by the fence in question, the court should charge on the law of the defense of property.

Appeal from the District Court of Comanche. Tried below before the Hon. N. R. Lindsey.

Appeal from a conviction of assault with intent to commit murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant on file.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—This is a conviction for assault with intent to murder, with two years punishment.

The facts in this case show that appellant and the injured party lived on adjoining farms with a lane between their farm fences. On Saturday appellant was informed by the prosecuting witness' son that prosecutor was going to move his fence out on the line. This would place prosecutor's fence within a few feet of appellant's door to his home. Appellant, the next Monday morning, being at home and seeing prosecutor and a couple of hands preparing to move the fence; the hands boring holes and prosecutor tearing the fence down, went out and

protested against his doing so, stating in substance, to prosecutor that it wasn't right. Appellant offered to leave the matter to arbitrators to be selected by prosecutor himself, or to the law. Prosecutor failing to agree to any proposition made by appellant, appellant turned and went into the house, some fifty or seventy-five yards away, returned with a breech-loading shot gun and shot prosecutor in the legs, four buckshot hitting. Appellant swears he did not attempt to kill him but aimed at his legs in order to cripple him to stop his tearing the fence down. Appellant fired one shot and upon his son protesting against firing again he declared he would not shoot a man when he was down.

Upon the trial of the case appellant attempted to prove by various witnesses, an agreed boundary between his land and prosecutor's land. This testimony was rejected by the court and a lengthy bill prepared but rejected by the court and the court presented his own bill which is in substance, as follows: "When the witness T. J. Hanson was being cross-examined by the defendant, and after said witness Hanson in answer to said cross-examination had stated that there had never been any controversy about the control of the fence which he was fixing to remove, and after he had stated that said fence had never been left there by him under any contract with Roch, he was asked the question, if it was true that he had never left said fence there under a contract with Mr. Roch. Before objection was made he answered that he had not. Whereupon the State objected to said question and answer, as being immaterial and irrelevant. The court sustained the objection. Appellant excepted, stating as a reason for such exception that the defendant proposed to prove by cross-examination of said Hanson that prior to the time of the difficulty, Roch and Hanson had entered into a contract whereby Roch acquired an easement and a right to use a block of land about three-fourths of an acre, immediately in front of Roch's house, and around which Hanson's fence had been run about six years prior to the difficulty, and had been using the land under the easement contract during the whole period of the time for more than six years. That at the time it was left out, it was left there for Roch to put his wood pile, leave his wagon and as a turning ground to get into his lot and house. That under the contract of easement there was a lane left between them for about half a mile, and through the whole course of the land making equal parts for both Hanson and Roch. That the road at the time it was made as a passage and travel way for the benefit of both Hanson and Roch, was the most convenient, and had been used in coming and going from town during the whole time of its being opened. That Hanson was fencing it, or attempting to fence it in a way that would close up Roch's lot gates, and the gate going into his yard. The defendant then stated he had as witnesses for the purpose of proving the same facts, Jim Leslie, Bob Leslie, Mike Roch, and Emmett Roch; that in his objections he stated that he proposed to prove on cross-examination by the witness Hanson, and the State objected likewise to such testimony, as being immaterial and irrelevant and defend-

ant excepted to the same, stating that his exceptions were the same as to the ruling as that sought to be proved by Hanson. On the next morning counsel again argued the admissibility of all of this testimony for the defendant, and the court adhering to its former decision and ruling, the defendant again excepted for the reasons before given in his exceptions as to Hanson.

The court declines to certify that said facts could have been proved, or would have been testified to by Hanson, because he stated under oath at the time the questions were asked that no such things ever occurred. I allowed defendant to prove that he claimed an easement in the road."

Bill of exceptions No. 2, shows that while the witness John Roch was on the stand, as a witness for the defendant, he was asked the following questions, and made the following answers: Q. Had Hanson ever sent any word to your father just prior to this time with reference to this matter? A. Yes, sir. Q. Tell it all? A. He told me things to tell my father several times that I didn't tell father. Q. If he ever sent your father word with reference to this particular business about which trouble came up, state it. To which question the State objected, and the court sustained the objection, to which the defendant excepted. Q. State whether or not, sometime immediately prior to this, prosecutor sent your father word that he was going to build this fence on the line, and make him put up a chicken fence to keep his chickens out. Objection was sustained to this. Q. State whether or not prior to this time, Hanson had threatened to build his fence there and kill any of your father's stock that he caught on his land. To which question the State objected, and the court sustained his objection. At the same time the defendant stated he proposed to propound the same question to the witness J. M. Leslie, and objection was sustained to his testifying.

At the time these rulings were made the court stated to the defendant's counsel that if at any time there was any evidence introduced that showed or tended to show any attack or threatened violence on the defendant by Hanson, at and before the time that defendant shot Hanson, that the court would then permit the defendant to introduce any evidence he might desire of any threats made theretofore by the witness Hanson against the defendant. At no time thereafter on the trial of the case did the defendant tender any witnesses in relation to said matter under the above statement of the court.

When the defendant tendered said proposed testimony of the witnesses Roch and Leslie he stated that he tendered it for the purpose of showing sufficient provocation to produce adequate cause for anger, rage and sudden resentment towards the witness Hanson. This latter bill was also prepared by the court in lieu of one prepared by appellant.

This testimony should all have been admitted for the purpose for which it was offered. The State's case made out an assault with intent to murder. Appellant had a right to show such circumstances if he

could as would reduce the killing, or the attempted killing to aggra-
vated assault. If appellant was laboring under such a degree of anger,
rage or sudden resentment at the time of the shooting that the same
rendered his mind incapable of cool reflection, then under the law of
this State, he would not be guilty of any higher offense than aggravated
assault in doing the shooting.

To settle this question, we must ascertain the mental status of
appellant at the time. If appellant could have proved as he proposed
to do, that prosecuting witness was flagrantly violating a previous agree-
ment with reference to an agreed lane or fence, this would be a cir-
cumstance to throw great light upon his mental status at the time of
firing the shot. On the other hand if the State could have shown
that appellant had admitted that this was prosecutor's fence; could
have shown that the fence was established there by and with the consent
of appellant, and prosecutor was simply attempting to repair the fence
and appellant had come out and fired upon him, because of said act
alone, then certainly appellant's previous knowledge. of his wanton act,
would be a strong circumstance to show malice. Then why should not
the converse of the proposition be true. If by a previous agreement
with prosecutor, appellant had a space left in front of his house for
the convenience and comfort of his home, which space had been peace-
fully used for six years, with the knowledge, consent and acquiescence
on the part of prosecutor; that appellant was to enjoy this peaceful
use of the land,—ruthlessly interfering was certainly calculated to
arouse in the mind of any one, anger, rage and resentment. There
is no one thing in this State more calculated to arouse resentment,
and justly so, than an unwarranted invasion of the rights to a peaceful
enjoyment of a home. Suppose appellant could have proven that
prosecutor, six years before, had deeded him the space in front of his
house, and then without any cause, he had attempted to build a fence
in front of his door over the space previously deeded, could not this be
proved as a basis for temper and passion? Certainly it could. Then
if appellant merely had an easement over the land for a definite or an
indefinite time which was ruthlessly violated by prosecutor, this would
constitute very little less provocation than if he had a deed to the
property itself. It is a matter of no concern to this court whether
he had a legal title to the property or not. The question here for our
consideration is, did the fact that prosecutor was violating a previous
agreement under the terms of which appellant had enjoyed the use of
sixty or seventy feet in front of his house for a wood pile and other
conveniences around the home, constitute a basis for the holding, the
invasion of which by prosecutor would cause anger, resentment or terror
such as rendered his mind incapable of cool reflection? We hold that
it was severely calculated to do so. However, this is a question of fact
that ought to have been admitted and left to the right of the jury to
pass upon same in the light of a proper charge.

The learned trial judge seems to rely upon the proposition that no

effort was made by the prosecutor to assault appellant at the time of the shooting. While the record sustains this contention, yet, it is not a predicate for holding that the appellant was not laboring under a great passion at the time he did the shooting. Therefore, any circumstances, such as, his nagging messages to appellant about killing his chickens and stock, forcing appellant to put up a chicken fence to keep his chickens out of prosecutor's field, would be circumstances taken in connection with all the other circumstances to show that appellant was laboring under intense anger at prosecutor at the time of the shooting. This is not a parallel question to the introduction of uncommunicated threats, where the injured party makes no overt effort to execute the threats. Under this state of facts, of course, uncommunicated threats would not be admissible, but the question we are considering, is, do all the antecedent bickerings of these parties and their previous agreements about the fence, the character of circumstances under which they were then resting, considered as a whole, form a reasonable basis for a jury deciding that they rendered appellant's mind incapable of cool reflection? We say the question can not be answered but one way, and that is,—yes. Of course, if the jury do not believe them they could find appellant guilty of assault to murder, or if they believe they do constitute a proper basis for passion, they could find appellant guilty of aggravated assault. This is the issue that we are called on to pass upon. We accordingly hold that the court should have permitted all of said testimony to be introduced.

Bill of exceptions No. 3, shows that appellant offered to prove by various witnesses that the prosecutor's reputation in the neighborhood was that of a violent and dangerous man. This bill is approved with the following statement: That at the time the witness John Roch was on the stand he was permitted to testify and did testify in reference to the general reputation of the prosecutor, without objection and thereupon the defendant offered further to prove the general reputation of said prosecutor by Leslie and the other witnesses, and "I sustained an objection to the same because in my opinion there was no evidence showing or tending to show any demonstration whatever on the part of said prosecutor to inflict any violence on the defendant; but I then stated to defendant's counsel that if the evidence at any time tended to show any such demonstration that then I would permit them to introduce this character of evidence from their witnesses; in my opinion no such evidence was offered." Clearly under the explanation of the court, this testimony is not admissible as stated above.

The fifth ground of the motion for a new trial is that the charge is obscure and misleading, in that it does not clearly instruct the jury that they must both find that the defendant had the specific intent to kill the said T. J. Hanson, at the time he shot him, and that he did it without adequate cause, and that they must find both of said things to exist beyond a reasonable doubt before they could convict the defendant of assault with intent to murder. We do not think the charge is subject to

this criticism, but think it correctly presents the reasonable doubts as to the two issues of assault with intent to murder and aggravated assault. There was clearly no error in the failure of the court to charge on self-defense, in the light of the record before us, since prosecutor was making no semblance of demonstration of any character against appellant at the time the shot was fired.

The last complaint of appellant is that the court erred in failing to charge the law·in relation to the defense and possession of property. Upon another trial, we suggest that this be done; if appellant's testimony which was rejected, be true he had a right under an agreement with prosecutor to the land attempted to be taken in by the fence.   Certainly such being the case, he had a right to a charge on the law of the defense of property.   Of course, if this testimony, as the prosecutor insists, in his statement, is not true, then the converse of the law ought to be charged.   We understand the law of this State to be that where one is in lawful possession of property, he has a right by every means to prevent any invasion of same by a third party.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.